IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRIS SCOTT MAYBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:11-cv-855 |
| ) | |
| HUMPHREYS COUNTY et al., ) | Judge Trauger |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Chris Scott Mayberry, a prisoner confined at the Lois M. DeBerry Special Needs Facility ("DSNF") in Nashville, Tennessee, brings this *pro se* action under 42 U.S.C. § 1983. (ECF No. 1.) The court has granted the plaintiff's application to proceed *in forma pauperis*, and must conduct an initial screening of the complaint in accordance with the Prison Litigation Reform Act ("PLRA").

**I. PLRA SCREENING OF PLAINTIFF'S COMPLAINT**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, or seeks and obtains permission to proceed without prepayment of fees and costs, the trial court must review the complaint and dismiss the action if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b). While the reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**II. FACTUAL ALLEGATIONS**

The plaintiff alleges that he is severely disabled by a rare disorder called fibrodysplasia that "makes [his] muscles turn into bone." (ECF No. 1, at 12.) As a result of this condition, he is unable to get into or out of bed, eat, or bathe on his own. He does not have the use of his arms or other muscles. He alleges that, before space became available to house him at the DSNF were he is currently held, he was confined for a period of time at the Humphreys County Jail, where he did not receive the medical treatment and care he

needed.

The plaintiff names nineteen defendants, including Humphreys County (named only in the case caption on the first page of the complaint), Humphreys County Sheriff Chris Davis; Humphreys County Judge Larry Wallace; Humphreys County District Attorney Lisa Donegan; Humphreys County Jail Administrator Becky Cunningham; County Commissioner Jesse Wallace; Corrections Officers Mike Mealler, Teddy Hooper, Tammy Ross, Will Hooper, Bonnie Robertson, Thelma Davidson, Theresa Howell, Brent Hubble, Alan Wallace, and Greg Ryan; Dr. George Maphai; Deputy Brian Baker; and Deputy David Flower.

More specifically, the plaintiff alleges that Sheriff Davis housed him at the Humphreys County Jail without a nurse or hospital bed from May 11, 2011 through June 7, 2011, despite his severe disability that prevents him from getting in or out of bed without assistance, bathing or eating without help. The plaintiff also alleges that Sheriff Davis refused to allow him access to a Koran or to practice his religion.

The plaintiff alleges that Judge Larry Wallace initially ordered the plaintiff to be detained on house arrest until space was available for him at the DSNF, but he retracted the order, revoked his bond, and ordered him sent to the Humphreys County Jail despite the absence of any facilities there to assist the plaintiff maintain his daily functions.[1]

The plaintiff alleges that District Attorney Lisa Donegan petitioned the court to revoke his bond for attending traffic court which resulted in his being taken into custody and housed without adequate medical care.

Jail Administrator Becky Cunningham was allegedly indifferent to the plaintiff's medical needs; for instance she did nothing to ensure his ability to use the bathroom. On the first day the plaintiff was housed at the jail, Cunningham required the plaintiff's mother to come to the jail to feed him. Cunningham allegedly ignored the plaintiff's repeated requests for a nurse to help with eating, bathing, and getting in and out of bed and instead contracted with other inmates to perform these functions. The plaintiff alleges that the care provided by other inmates was not adequate. For instance, on one occasion another inmate was ordered to bandage an injury on the plaintiff's foot, but he did it incorrectly and the injury became infected.

---

[1] The plaintiff does not indicate the terms of his house arrest, but indicates that he was arrested for violating them and his bond revoked because he left his house to attend traffic court.

The plaintiff alleges that County Commissioner Jesse Wallace was informed of the plaintiff's condition and surroundings but refused to help, stating that the matter was "out of [his] hands." (ECF No. 1, at 11.)

Defendants Mealler, T. Hooper, Ross, W. Hooper, Robertson, Davidson, Howell, Hubble, Wallace and Ryan are staff at the jail who refused to feed, bathe, or dress the plaintiff, or help him get in and out of bed, and instead ordered other inmates to perform these tasks. The plaintiff alleges that he requires a nurse at all times and that ordering other inmates to help him did not cover his basic needs. The staff refused to provide a hospital bed or medical treatment. The plaintiff alleges that as a result of his detention at the Humphreys County Jail, he lost a significant amount of weight because the defendant Corrections Officers refused to help him with his food. He also claims an injury became infected for want of medical attention.

The plaintiff alleges that Dr. George Maphai, acting doctor at the county jail, refused to order a bed or nurse for him despite his repeated requests. Because he did not have a hospital bed, the plaintiff alleges that he "had to lie on a paper thin mat on top of solid concrete which worsened [his] condition." He also claims that, as a result of his condition, he is in constant pain, but Dr. Maphai refused to allow him sufficient medication.

The plaintiff alleges that Deputies Brian Baker and David Flower, when they arrested him (apparently for violating the term of his bond), dragged him thirty feet causing an injury to his foot and dislocating his elbow. They then called an ambulance and released the plaintiff from custody temporarily in order to avoid paying the medical bills associated with the injuries they caused.

The plaintiff seeks damages from each of the defendants.

### III.    ANALYSIS

To bring a successful claim under 42 U.S.C. § 1983, a plaintiff must establish "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). The plaintiff does not specify the constitutional provisions or federal laws that the various defendants practices allegedly violated. The court, therefore, liberally construes the complaint to allege that the defendants' actions violated the Eighth Amendment.

####     A.        **Plaintiff Fails to State a Claim against Humphreys County**

It is unclear whether the plaintiff intends to assert claims against Humphreys County but, to the extent he does, the claims fail. Although a county or municipality may be a "person" for purposes of § 1983, the law is clear that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior*[2] theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for the deprivation of rights protected by the Constitution." *Monell*, 436 U.S. at 690. "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986)). Thus, a municipality, or county, cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). In short, the plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (internal quotation marks and citations omitted).

In the present complaint, the plaintiff does not remotely allege the existence of any type of official Humphreys County policy that led to the injuries allegedly suffered by the plaintiff, or even that Humphreys County, the entity, was aware of the actions taken by the individual defendants. Because the plaintiff has not alleged the existence of a Humphreys County policy that gave rise to his injuries, the § 1983 claims against the County are subject to dismissal.

### B.     Plaintiff Fails to State a Claim against Judge Wallace

The plaintiff sues Judge Wallace in his individual capacity for revoking the plaintiff's bond and

---

[2] *"Respondeat superior"* is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." Ballentine's Law Dictionary (3d ed. 1969).

ordering him to be placed in custody in the Humphreys County Jail pending an opening at the DSNF, despite the defendant's knowledge of the plaintiff's medical condition. Judge Wallace, however, is protected from suit by the cloak of judicial immunity, and the plaintiff has not provided any facts that would override such immunity.

"Few doctrines [are] more solidly established . . . than the immunity of judges from liability for acts committed within their jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) (citing *Bradley v. Fisher*, 80 U.S. 335 (1871)). Judges are absolutely immune from liability for acts committed within their jurisdiction even if those acts are committed "maliciously and corruptly." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). The only two exceptions to this immunity are (1) when a judge's actions are not taken in the judge's judicial capacity, *Forrester v. White*, 484 U.S. 219, 227–29 (1988); and (2) when a judge's acts are taken in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 502 U.S. at 10 (citations omitted).

The plaintiff's complaint makes it clear that Judge Wallace's actions were judicial in nature, taken in his judicial capacity, and were well within his jurisdiction. The judge is therefore is entitled to judicial immunity and the claims against him will be dismissed.

### C. Plaintiff Fails to State a Claim against District Attorney Donegan

Whether the plaintiff sues District Attorney Donegan in her official or individual capacity, the court finds that she is immune from suit under § 1983.

First, District Attorney Donegan is a state employee, Tenn. Code Ann. § 8-42-101(3)(A), such that a claim against her in her official capacity is in essence a claim against the State. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Suing a state officer in her official capacity for damages is equivalent to suing the state itself which is prohibited by the Eleventh Amendment, *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989), unless the State has waived its immunity, *Welch v. Tex. Dep't of Hwys. and Pub. Transp.*, 483 U.S. 468, 473 (1987) (plurality opinion), or "unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

In that regard, the Supreme Court has expressly held that the State is not a "person" subject to suit under § 1983, and that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *Id.* at 64, 65. Nor has the plaintiff shown that the State of Tennessee has waived its immunity. *Cf. Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (citing Tenn. Code Ann. § 20-13-102(a) as barring suits in state court (or, implicitly, in federal court) against the state or where state treasury funds are potentially involved). In short, the federal courts do not have subject-matter jurisdiction over causes of actions against officers of a state who are sued in their official capacity for damages. *See Cummings v. Wilkerson*, 134 F.3d 370 (Table), 1998 WL 30803, at *1 (6th Cir. Jan. 23, 1998). Accordingly, to the extent the plaintiff brings claims against District Attorney Donegan in her official capacity, such claims must be dismissed.

Moreover, as a general matter, prosecutors are immune from suit under § 1983 for monetary damages when they act in their official, prosecutorial capacities. In *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976), the Supreme Court established the absolute immunity of a prosecutor from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the state's case." The Court has subsequently confirmed that a prosecutor acting in his prosecutorial role as advocate for the State is entitled to absolute immunity. *Burns v. Reed*, 500 U.S. 478, 487–92 (1991) (extending *Imbler* to accord absolute immunity to a prosecutor for participation in a probable cause hearing that led to the issuance of a search warrant, because he was acting in his prosecutorial role); *see also Manetta v. Macomb Cnty. Enforcement Team*, 141 F.3d 270, 279 (6th Cir. 1998); *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir.) ("Investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity[.]"), *cert. denied*, 522 U.S. 996 (1997). The immunity accorded to prosecutors extends to all decisions to prosecute except those "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (citations omitted).

The plaintiff here challenges the legality of District Attorney Donegan's actions as they relate to the revocation of the bond pursuant to which plaintiff remained on house arrest rather than in custody. Revocation of the bond ultimately resulted in the plaintiff's being detained at the Humphreys County Jail from May 11 through June 7, 2011. The plaintiff does not allege that Donegan acted outside her role as a

prosecutor and advocate for the State. The facts as alleged are not sufficient to warrant abrogation of Donegan's prosecutorial immunity.

Because a prosecutor who seeks revocation of a bond based upon violation of its terms is not acting outside her prosecutorial role, District Attorney Donegan is absolutely immune from the plaintiff's claims in this lawsuit.

### D. The Claims against the Remaining Defendants

The court finds that the allegations in the complaint may be construed to state colorable claims under § 1983 against the remaining defendants (Sheriff Chris Davis, Jail Administrator Becky Cunningham, County Commissioner Jesse Wallace, Corrections Officers Mike Mealler, Teddy Hooper, Tammy Ross, Will Hooper, Bonnie Robertson, Thelma Davidson, Theresa Howell, Brent Hubble, Alan Wallace, and Greg Ryan, Dr. George Maphai, and Deputies Brian Baker and David Flower) in their individual capacity.[3]

With respect to all the remaining defendants except Deputies Baker and Flower, the plaintiff's allegations may be construed to state a claim that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.[4] To prove an Eighth Amendment claim alleging deliberate indifference to a prisoner's medical needs, the plaintiff must show a serious medical need and "that an official who actually knew of the serious medical need possessed 'a sufficiently culpable state of mind in denying medical care.'" *Perez v. Oakland Cnty.*, 466 F.3d 416, 424 (6th Cir. 2006) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005)). The "deliberate indifference"

---

[3]The form complaint filled out by the plaintiff contains space to list two defendants, and spaces to check whether the defendants are sued in their individual or official capacity. The defendant checked the box to indicate he was suing the first two defendants listed, Sheriff Davis and Judge Wallace, in their individual capacity. (He checked the box for official capacity as well, but then appears to have crossed through that mark.) The plaintiff simply listed the names, place of employment, and addresses of the other defendants on attached sheets of notebook paper, but the allegations in the complaint are sufficient to indicate he sues these defendants in their individual capacity. To the extent the plaintiff seeks to sue the remaining defendants, all of whom appear to be county employees, in their official capacity, such claims would fail on the basis that the plaintiff has not alleged or shown that the defendants' alleged unconstitutional actions stemmed from a municipal policy, custom, or procedure the implementation of which caused the injuries about which the plaintiff complains. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[4] The plaintiff does not specifically allege whether he is (or was at the pertinent time) a pretrial detainee or has instead already been convicted of a crime. The fact that he was held in the Humphreys County Jail only until space became available for him in the DSNF, a TDOC facility, suggests that he has already been convicted on state charges and was not a pretrial detainee at the time. The court therefore presumes that the Eighth Amendment governs his claim.

standard "contains both an objective component---whether the deprivation was sufficiently serious—and a subjective component—whether the prison official acted with a sufficiently culpable state of mind." *Bowman v. Corrections Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003) (citation omitted). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Miller*, 408 F.3d at 813 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Here, the plaintiff alleges a serious medical condition and a severe exacerbation of his condition resulting from the defendants' actions by persons who knew about his medical condition and his need for special assistance. Although it is unclear at this stage whether the plaintiff will prevail, he has stated a colorable claim under the Eighth Amendment for purposes of the court's PLRA screening.

Specifically with respect to Deputies Baker and Flower, the plaintiff alleges that these defendants unnecessarily dragged him while arresting him, although he was not resisting and is obviously disabled, resulting in an injury to his foot and a dislocated shoulder. The court construes the plaintiff's complaint as alleging that the deputies used excessive force in arresting him, in violation of the Eighth Amendment.[5]

The Sixth Circuit has defined the standard for evaluating Eighth Amendment excessive force claims as follows:

> The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the unnecessary and wanton infliction of pain. In other words, [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton.

*Id.* at 953--54 (citations and internal quotation marks omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. . . . This is true whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the Eighth Amendment prohibition does allow for *de minimis* uses of force that are not repugnant to the

---

[5] Again, the court presumes that the plaintiff is (and was at the pertinent time) a post-conviction inmate and not a pretrial detainee, such that the Eighth Amendment rather than the Fourteenth Amendment applies to his claims.

conscience of mankind.  *Id.* at 9–10.

In the present case, the plaintiff does not specifically allege that the defendant deputies acted "maliciously and sadistically," but the plaintiff's disability and the total circumstances alleged reasonably give rise to an inference that the defendants acted wantonly and maliciously in the course of arresting the plaintiff. Again, for purposes of the PLRA screening requirement, the court finds that the plaintiff has stated a colorable claim for a violation of his Eighth Amendment rights against these defendants.

## IV.    CONCLUSION

For the reasons explained herein, the court finds that the plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983 against Humphreys County, while Judge Larry Wallace and District Attorney Lisa Donegan are absolutely immune from suit premised on actions taken in their judicial and prosecutorial capacity, respectively.  The claims against those defendants will therefore be dismissed with prejudice.  The plaintiff will be allowed to proceed with his claims against the remaining defendants.

An appropriate order will be entered.

Aleta A. Trauger
United States District Judge