IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHRIS SCOTT MAYBERRY )
)
v. ) NO. 3:11-0855
)
HUMPHREYS COUNTY, et al. )

TO: Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

By Order entered September 16, 2011 (Docket Entry No. 6), this action was referred to the Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Motion for Summary Judgment (Docket Entry No. 106) of Defendants Humphreys County, Tennessee, Chris Davis, Becky Cunningham, Mike Mealler, Teddy Hooper, Tammy Ross, Will Hooper, Bonnie Robertson, Thelma Davidson, Theresa Howell, Brent Hubble, Alan Wallace, Greg Ryan, Brian Baker, and David Flowers. Although the plaintiff has filed three letters with the Court subsequent to the filing of the motion for summary judgment, see Docket Entry Nos. 119, 127, and 128, he has not filed a response in opposition to the motion.[1] Set out below is the Court's recommendation for disposition of the motion.

---

[1] By Order entered December 31, 2012 (Docket Entry No. 117), the plaintiff was notified of the motion and given a deadline of February 11, 2103, to file a response.

## I. BACKGROUND

The plaintiff is currently a prisoner confined at the Lois M. DeBerry Special Needs Facility ("DSNF") within the custody of the Tennessee Department of Correction ("TDOC"). He filed this action pro se and in forma pauperis on September 7, 2011, seeking damages under 42 U.S.C. § 1983 for alleged violations of his civil rights that occurred in Humphreys County, Tennessee. He also seeks relief under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq.

The plaintiff is severely disabled by a rare disorder called fibrodysplasia that "makes [his] muscles turn into bone." See Complaint (Docket Entry No. 1), at 12. As a result of this condition, he is significantly limited in the use of his arms or other muscles and in his ability to move, get into or out of bed, eat, dress, or bathe on his own. On May 11, 2011, the plaintiff was arrested by Deputies Brian Baker and David Flowers after the plaintiff attended traffic court.[2] He alleges that Baker and Flowers unnecessarily dragged him several feet during the arrest although he was not resisting and was obviously disabled, which he alleges caused him to suffer an injury to his foot and a dislocated elbow.

The plaintiff was thereafter taken to the Humphreys County, Tennessee Jail ("Jail"), where he was confined until June 7, 2011, when he was transferred to the DSNF. While at the Jail, he alleges that he was not given a hospital bed or the assistance of a nurse despite his medical condition and his unique needs and that the staff at the Jail, including Humphreys County Sheriff Chris Davis and Jail Administrator Becky Cunningham, refused to ensure that he was properly assisted in basic daily functions such as eating, bathing, dressing, going to the bathroom, "rotating," and getting in

---

[2] Although it is not entirely clear from the record, it appears that the plaintiff was on house arrest at the time he attended traffic court and was arrested for violating the terms of his house arrest.

and out of bed. Instead, he alleges that his mother was permitted to come to the Jail and help him eat on May 11, 2011, and that three other inmates at the Jail were told by or "contracted with" the Jail staff to assist him. He states that he was forced to lie on a thin mat on top of the concrete floor, lost significant weight, and suffered an infection in his foot because it was not properly treated. The plaintiff alleges that Dr. Mathai, the acting doctor at the Jail, refused to make appropriate orders for his treatment and refused to provide him with pain medication. The plaintiff also alleges that his First Amendment religious rights were violated because Sheriff Davis "tried to force his religion on [the plaintiff]" and would not let the plaintiff have a Koran "but instead tried to make [the plaintiff] take the Bible." See Complaint (Docket Entry No. 1), at 10.

In his complaint, the plaintiff named nineteen defendants: Humphreys County, Tennessee, Humphreys County Sheriff Chris Davis; Judge Larry Wallace; Humphreys County District Attorney Lisa Donegan; Humphreys County Jail Administrator Becky Cunningham; Humphreys County Commissioner Jesse Wallace; Corrections Officers Mike Mealler, Teddy Hooper, Tammy Ross, Will Hooper, Bonnie Robertson, Thelma Davidson, Theresa Howell, Brent Hubble, Alan Wallace, and Greg Ryan; Dr. George Mathai; Deputy Brian Baker; and Deputy David Flowers. By Order and Memorandum entered September 16, 2011 (Docket Entry Nos. 5-6), the Court dismissed Humphreys County, Larry Wallace, and Lisa Donegan from the action, but found that the plaintiff had alleged arguable claims for relief against the other 16 defendants. See Docket Entry No. 5, at 7, n. 3. The plaintiff subsequently amended his complaint to add Humphreys County based on claims of municipal liability. See Order entered December 7, 2011 (Docket Entry No. 24).

By Order entered September 28, 2012 (Docket Entry No. 93), the Court adopted the Report and Recommendation entered September 4, 2012 (Docket Entry No. 86), and granted Dr. Mathai's

3

motion for summary judgment, denied Humphreys County's motion to dismiss, and granted in part the motion to dismiss of the individual defendants and dismissed from the action the claims brought against Defendant Jesse Wallace, the claim against Sheriff Davis for failure to file a report against Defendants Baker and Flowers, the individual liability claims brought under the ADA, and the official capacity claims against the individual Defendants.

As a result of the pretrial proceedings, the claims remaining in this action are: 1) a claim that the plaintiff was treated with deliberate indifference with respect to his medical and housing needs; 2) a claim that the plaintiff was prevented from practicing his religion; 3) a claim that Defendants Baker and Flowers used excessive force against him during his arrest on May 11, 2011; and 4) a claim that Humphreys County violated the ADA.

## II. THE DEFENDANTS' MOTION

The Defendants contend that they are entitled to judgment as a matter of law in their favor on all claims brought by the plaintiff because the plaintiff cannot set forth evidence in support of his claims raising a genuine issue of material fact sufficient to allow this action to proceed to trial. They further contend that the individual defendants are entitled to qualified immunity from any damage claims. In support of their motion, the Defendants rely on the affidavits of Dr. George Mathai (Docket Entry No. 116-5), Defendant Chris Davis (Docket Entry No. 116-3), Defendant Becky Cunningham (Docket Entry No. 116-1), Defendant Brian Baker (Docket Entry No. 116-2), and Defendant David Flowers (Docket Entry No. 116-4). The Defendants also rely on copies of the Jail Log generated during the plaintiff's incarceration at the Jail, see Docket Entry Nos. 110-114, and copies of the medical and other records from the Jail. See Docket Entry No. 115-2.

4

With respect to the plaintiff's claim that he was not provided with constitutionally adequate medical treatment and housing, the Defendants argue that the undisputed evidence shows that officials at the Jail took appropriate action, that there is no evidence that the plaintiff suffered any type of injury while at the Jail, and that there is no evidence that he was treated with deliberate indifference. Defendants Cunningham and Davis assert that they both took immediate steps to address the plaintiff's unique medical and housing needs when they learned that he was to be housed at the Jail on May 11, 2011. Defendant Davis asserts that he requested that Dr. Mathai evaluate the plaintiff on May 11, 2011, and that he sent Dr. Mathai's evaluation letter, in which Dr. Mathai opined that the plaintiff should be housed at a special needs facility, to the local assistant district attorney who filed a motion on May 13, 2011, for an emergency transfer of the plaintiff to the TDOC. See Affidavit of Davis (Docket Entry No. 116-3). Defendant Davis states that, although this motion was granted on May 16, 2011, and he took steps to arrange the transfer of the plaintiff to the TDOC, the DSNF did not have availability for the plaintiff until he was transferred on June 7, 2011. Id.

Defendant Cunningham asserts that she and staff at the Jail made efforts to attend to the plaintiff's needs while he was at the Jail, including providing him Tylenol and with medication as prescribed by Dr. Mathai, placing him in a single cell for his safety, providing him with additional bed mats, allowing him to use the handicapped shower and restroom in the trustee's cell, and, eventually, moving him to the trustee's cell. See Affidavit of Cunningham (Docket Entry No. 116-1). The plaintiff was also examined by Dr. Mathai on May 11, May 26, and June 2 of 2011. Id. Defendant Cunningham asserts that the Jail does not employee a nurse, but that after Dr. Mathai indicated on June 2, 2011, that the plaintiff required 24 hour nursing care, she contacted two home

5

health companies about providing nursing care for the plaintiff but that the plaintiff was transferred to the TDOC prior to a contract being finalized for such care. Id. During the approximately three weeks prior to the plaintiff's transfer to the TDOC, Defendant Cunningham asserts that correctional officers assisted the plaintiff with his daily living tasks of turning, sitting, using the restroom, showering, and eating and that three inmates at the Jail who volunteered to assist the plaintiff because they had helped the plaintiff with these tasks when he was not incarcerated also assisted the plaintiff. Id.

With respect to the plaintiff's First Amendment freedom of religion claim, Defendant Davis disputes that the plaintiff was denied access to religious materials, that he was prevented from practicing his religion, or that any religious beliefs were imposed upon him. Defendant Humphreys County argues that there is no proof that any of the alleged violations were due to a practice or policy of Humphreys County and contend that the plaintiff was neither denied the benefits of the services, programs, or activities at the Jail nor subjected to discrimination on account of his disability.

Finally, Defendants Baker and Flowers deny using excessive or unreasonable force while arresting the plaintiff. They contend that they initially attempted to slowly escort the plaintiff to the Jail because the distance from the point of his arrest to the Jail was less than 100 yards, but that the plaintiff refused to walk, at which point they gently took his arms and slowly began to walk him toward the Jail. See Affidavit of Baker (Docket Entry No. 116-2) and Flowers (Docket Entry No. 116-4). They contend that the plaintiff refused to walk and fell forward, but that they caught him before he hit the ground and stood him upright again. Id. Upon the plaintiff's complaint of injury and demand for a doctor and ambulance, Defendant Baker and Flowers called for an ambulance to transport him to the Jail. Id.

6

The plaintiff has not filed a response in opposition to the motion for summary judgment, but he did file three letters subsequent to the filing of the motion for summary judgment. See Docket Entry Nos. 119, 127, and 128. However, his first letter is only a request to amend his deposition, which the Court construed as a motion and denied, see Docket Entry No. 122, and his second letter is essentially a request for the appointment of counsel.[3] His third letter consists of allegations concerning his current confinement within the TDOC and his belief that he should be given an emergency release from his current incarceration, an issue that is not before the Court within the context of the instant action. In none of the plaintiff's three letters does he address any of the Defendants' arguments for summary judgment.

## III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert.

---

[3] By Order entered June 21, 2013, Docket Entry No. 129, the Court denied the request for the appointment of counsel.

denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his position; a mere

"scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. CONCLUSIONS

The plaintiff has not responded to the arguments made in the motion for summary judgment, has not rebutted the Defendants' supporting evidence, and has not set forth any actual evidence supporting his claims. When a motion for summary judgment is made and properly supported under Rule 56 of the Federal Rules of Civil Procedure, such as the motion filed by the Defendants, the non-moving party may not merely rest on allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323-24; Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002); Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). Although the plaintiff is proceeding pro se, his pro se status does not relieve him of the obligation under Rule 56 of the Federal Rules of Civil Procedure to set forth admissible evidence showing that genuine issues of material fact exist which require that the action proceed to trial. This is the threshold requirement for all non-moving parties when summary judgment is sought by an opposing party. Sixty Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).

Based on the evidence that is before the Court, no reasonable jury could find in favor of the plaintiff on his claims. Even when the evidence is viewed in the light most favorable to the plaintiff, there is simply no evidence that he was treated in a manner that violated his constitutional rights or his rights under the ADA. Given the dearth of evidence supporting his claims, any factual questions fail to rise to the level of genuine issues of material fact that require that this action proceed to trial.

9

With respect to the plaintiff's medical and housing claims, the Cruel and Unusual Punishment Clause of the Eighth Amendment prohibits the wanton and unnecessary infliction of pain upon convicted prisoners and requires that prisoners be provided with a level of medical care and housing that is consistent with contemporary standards of decency. See Rhodes v. Chapman, 452 U.S. 337, 347-48, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." The Supreme Court reiterated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), that deliberate indifference by prison officials which subjects a prisoner to inhumane conditions of confinement violates the Eighth Amendment. However, an Eighth Amendment claim requires more than allegations of negligence or even medical malpractice. See Estelle, 429 U.S. at 106; Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985). Furthermore, the Eighth Amendment does not guarantee that a prison inmate receive the "optimum or best medical treatment." Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).

Contrary to the scenario the plaintiff suggests in his Complaint, the undisputed evidence before the Court does not support a finding that he was subjected to medical or living conditions that fell below constitutional standards or a finding that he was treated with deliberate indifference by any of the Defendants. To the contrary, the only reasonable conclusion that can be reached from the evidence is that Defendants Davis and Cunningham, as the administrators of the Jail, took reasoned and appropriate actions to address the medical and housing needs of the plaintiff while he was incarcerated at the Jail by contacting medical providers, quickly requesting his transfer to the TDOC,

10

responding to his needs with the resources and staff available at the Jail, and seeking to obtain nursing care for the plaintiff when such care was recommended by Dr. Mathai. In contrast to cases in which inmates with special needs were treated with apathy or ignored, see Hicks v. Frey, 992 F.3d 1450 (6th Cir. 1993) (paraplegic inmate was subjected to conditions of confinement which rendered him essentially bedridden and deprived him of basic human needs); Weeks v. Chaboudy, 984 F.2d 185 (6th Cir. 1993) (prison physician's refusal to admit wheelchair bound inmate to infirmary prevented the inmate from using his wheelchair and rendered him unable to shower himself or care for his person); and Leach v. Shelby Cnty., 891 F.2d 1241 (6th Cir.), cert. denied, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1989) (paraplegic inmate was not given a special mattress or assistance with bathing or bodily functions for his first ten days in county jail), there is no evidence before the Court that the plaintiff was ignored or was treated in such a cursory and apathetic manner that it could be concluded that his treatment amounted to no treatment at all. Furthermore, in light of the steps taken by Defendants Davis and Cunningham to address the plaintiff's needs, the plaintiff's assertion that other actions should have been taken, such as providing him with a hospital bed, is not supportive of his claims because deliberate indifference is not shown simply because "alternative procedures might have better addressed [a prisoner's] particular needs." Graham v. County of Washtenaw, 358 F.3d 377, 384 (6th Cir. 2004).

With respect to the plaintiff's First Amendment claim, the plaintiff alleges that Defendant Davis refused to allow him to have a Koran and tried to make him "take the Bible." See Complaint (Docket Entry No. 1), at 10. Defendant Davis states in his affidavit that the Jail does not sponsor or organize religious activities but accommodates outside religious groups who request to provide religious services to inmates, that the Jail provides donated religious reading materials to inmates,

11

and that the Jail accommodates requests by outside groups or individuals to provide inmates at the Jail with religious reading materials. See Affidavit of Davis (Docket Entry No. 116-3), at 2. Defendant Davis also states that no one at the Jail took religious materials from the plaintiff, no outside group or individual made a request to provide religious materials to him or perform a religious service for him, and that the plaintiff was not forced to participate in any religious services. Id. The plaintiff has not rebutted the Defendant's evidence or presented any evidence supporting his contention that his First Amendment rights were violated. The plaintiff's unsupported assertions are simply insufficient to support genuine issues of material fact requiring that his claim proceed to the trier of fact. See Bell, 351 F.3d at 247; Goins, 926 F.2d at 561.

Furthermore, the plaintiff's complaints fail to rise to the level of constitutional concern. Although prison inmates do not lose their First Amendment right to exercise their religion because of incarceration, Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987), "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." Walker v. Mintzes, 771 F.2d 920, 929 (6th Cir. 1985). The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate, and the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. See Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). At best, the plaintiff's complaints are about de minimis infringements. Such infringements do not rise to the level required for a constitutional

12

claim. See Mabon v. Campbell, 2000 WL 145177 (6th Cir. Feb. 1, 2000); Stoner v. Jett, 1991 WL 138439 (6th Cir. July 29, 1991).

The plaintiff's Fourth Amendment excessive force claim against Defendants Baker and Flowers also warrants dismissal. Under the Fourth Amendment, individuals have a right to be free from excessive force when police make an arrest or seizure. See Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Lyons v. City of Xenia, 417 F.3d 565, 575 (6th Cir. 2005); Kostrzewa v. City of Troy, 247 F.3d 633, 638-39 (6th Cir. 2001). However, the mere fact that force was used is not itself evidence of a constitutional violation since "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.

The touchstone question is the reasonableness of the actions of Defendant Baker and Flowers. The reasonableness inquiry is an objective one: were the officers' actions objectively reasonable in light of the facts and circumstances confronting the officers, without regard to the officers' underlying intent or motivation. Graham, 490 U.S. at 397. Determining reasonableness requires careful attention to the particular facts of each case because what is reasonable is not capable of universal definition. Bell v. Wolfish, 441 U.S. 520, 559 (1979). In Graham, the Supreme Court instructed reviewing courts to consider various factors in evaluating excessive force claims and noted that the proper application of the reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. These

13

factors do not constitute an exhaustive list, however, and the ultimate question is whether the totality of the circumstances justifies a particular use of force. Id.

In light of these legal principles, no reasonable jury could find that Defendants Baker and Flowers used excessive force against the plaintiff in violation of his Fourth Amendment rights. The plaintiff has not rebutted the affidavits of Defendants Baker and Flowers, which present facts consistent with officers who used very minimal force and who acted reasonably and in a constitutional manner. There is no evidence that the Defendants used gratuitous force, that they acted excessively or maliciously, that they ignored the plaintiff's physical limitations, or that they continued to use force after it was clear that the plaintiff either could not or would not walk the short distance to the Jail. Further, the plaintiff has not offered any actual evidence supporting his contention that he suffered a foot injury or a dislocated elbow.

The Court's finding that there is no evidence that a constitutional violation occurred is sufficient to warrant dismissal of the claims against the individual defendants without a full analysis of the qualified immunity defense, see Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Jones v. Byrnes, 585 F.3d 971, 975 (6th Cir. 2009), and is also sufficient to support dismissal of the municipal liability claim against Humphreys County. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986).

The plaintiff's final claim is that Defendant Humphreys County violated the ADA because he was housed in a cell that did not accommodate his disability and his special needs and because he was generally confined in a manner inconsistent with his disability. Title II of the ADA applies to public entities, see 42 U.S.C. § 12131(1)(B), and is applicable to services, programs, or activities of correctional facilities. See Pennsylvania Dep't of Corr. v. Yetsky, 524 U.S. 206, 210, 118 S.Ct.

14

1952, 141 L.Ed.2d 215 (1998) (Title II applies to state prisons); Mingus v. Butler, 591 F.3d 474, 482 (6th Cir. 2010). Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The plaintiff has offered no evidence showing that he was denied any services or that he was intentionally discriminated against. In short, he has no evidence supporting an ADA claim. Indeed, the weight of the evidence before the Court is that Humphreys County, through its officials at the Jail, took affirmative and reasonable steps to accommodate the plaintiff's special needs taking into account that the Jail is a place of incarceration. See Tucker v. Tennessee, 539 F.3d 526 (6th Cir. 2009); Moore v. Curtis, 68 Fed.Appx. 561 (6th Cir. June 13, 2003) (summary judgment granted to defendants on disabled inmate's claim that ADA was violated because prison officials did not give him an assistant).

### RECOMMENDATION

Based on the forgoing, the Court respectfully RECOMMENDS that the Motion for Summary Judgment (Docket Entry No. 106) of Defendants Humphreys County, Tennessee, Chris Davis, Becky Cunningham, Mike Mealler, Teddy Hooper, Tammy Ross, Will Hooper, Bonnie Robertson, Thelma Davidson, Theresa Howell, Brent Hubble, Alan Wallace, Greg Ryan, Brian Baker, and David Flowers be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

*[signature]*
JULIET GRIFFIN
United States Magistrate Judge